IN THE SUPREME COURT OF PENNSYLVANIA
EASTERN DISTRICT

**CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : No. 657 CAP |
| | : |
| Appellee | : Appeal from the Order entered on |
| | : 04/04/2012 in the Court of Common Pleas, |
| | : Criminal Division of Montgomery County at |
| v. | : No. CP-46-CR-0002785-2005 |
| | : |
| | : |
| JOHN CHARLES EICHINGER, | : |
| | : |
| Appellant | : SUBMITTED:  June 19, 2013 |
| | : |

## CONCURRING OPINION

**MR. JUSTICE STEVENS**                    **DECIDED:  December 31, 2014**

I join the Majority in its entirety.  I write separately to emphasize my agreement with the Majority's admonishment to PCRA capital counsel, the Federal Community Defender Office, that the tactics employed in this case, which are designed to impede the already overburdened wheels of justice, cannot be tolerated.

Simply put, those who oppose the death penalty should address their concerns to the legislature.  Using the court system as a way to delay, obstruct, and, thus, by implication invalidate a law passed by duly elected senators and representatives cannot be characterized as proper, zealous advocacy.   That is to say, "the gravity of a capital case does not relieve counsel of their obligation under Rule 3.1 of the Rules of Professional Conduct not to raise frivolous claims."  <u>Commonwealth v. Chmiel</u>, 612 Pa.

333, 468, 30 A.3d 1111, 1191 (2011) (citation and footnote omitted). If change is desired, the proper path of action is to lobby the legislature rather than to overwhelm our courts with such a systematic attack on the death penalty statute.

The record establishes that Appellant's crimes were particularly heinous. On March 25, 2005, Appellant planned the murder of Heather Groves, stabbed her repeatedly seeking to puncture her organs, stabbed and murdered Heather's three-year-old daughter, who had witnessed the stabbing of her mother, and then murdered Heather's sister, Lisa, to eliminate her as a witness. Not done yet, Appellant returned to Heather and stabbed her in the diaphragm and slit her throat, killing her.

As described by the well-reasoned Majority, Appellant received full representation and due process, resulting in court-appointed counsel litigating numerous pre-trial and post-trial motions, a three-day death penalty phase hearing, as well as this Court's examination of the proceedings, evidence, and sentence upon direct appeal. See Commonwealth v. Eichinger, 591 Pa. 1, 915 A.2d 1122 (2007), cert. denied, 552 U.S. 894 (2007).

However, thereafter, the record reflects PCRA capital counsel raised 27 claims of error, which can only be described as excessive, in the amended PCRA petition. This resulted in 22 days of PCRA court evidentiary hearings and a 129-page PCRA court opinion. PCRA capital counsel has continued with this strategy on appeal to this Court by presenting 12 issues for our consideration, many of which are frivolous arguments, "which is to say arguments that cannot conceivably persuade the court[.]" Chmiel, 612 Pa. at 468, 30 A.3d at 1190 (quotations and quotation marks omitted).

While an attorney may have an ethical obligation to be a zealous advocate, he has no duty to pester the courts with frivolous arguments. In fact, an attorney does his client a disservice by failing to winnow out the weaker arguments and focusing on central, key issues, upon which his client might be granted relief. Adding weaker, particularly frivolous arguments, dilutes the force of the stronger ones and makes it difficult for a court to focus on those issues which are deserving of attention, i.e., those which are non-frivolous.

Common sense dictates that, when an attorney raises an excessive number of issues, as occurred in this PCRA case, the motivation for so doing is to paralyze the court system to further personal political views. It is not hard to discern that, in such cases, the strategy of PCRA capital counsel is not necessarily to put forth the best legal arguments upon which his client may be granted relief; but rather, the strategy is to keep, at all costs, his client from suffering the ultimate penalty proscribed by law. Such personal political viewpoints, manifested in such a manner as to cause disruption and paralysis, have no legitimate place in our court system.

Moreover, the public resources wasted by PCRA capital counsel's pursuit of numerous frivolous claims cannot be tolerated. Substantial investigative resources, police officers testifying in court, and judges, along with court personnel, devoting precious time to the rejection of excessive frivolous claims is a basis for imposing sanctions upon those attorneys who violate or ignore their obligations under our Rules of Professional Conduct. While federally-financed lawyers, such as those who represented Appellant as PCRA capital counsel in this case, have the duty, like any

attorney, to raise and pursue viable claims, they must do so within the ethical limits which govern all Pennsylvania lawyers.

In the case <u>sub judice</u>, Appellant committed his brutal murders more than nine years from the date of this writing; however, and despite the fact that a jury made the agonizing decision to sentence Appellant under the death penalty laws, this case illustrates the administration of justice is more often than not paralyzed by what the Majority accurately calls "predictable tactics."  Due, in part, to PCRA capital counsel's dysfunctional strategies, the families of the victims become yet another victim to Appellant's brutal crimes.  As Chief Justice Castille eloquently stated in his Concurring Opinion in <u>Commonwealth v. Spotz</u>, 610 Pa. 17, 170, 18 A.3d 244, 335 (2011): "[T]his Court is not obliged to indulge political tactics that seek to dismantle or impede governing law.  The difference of death does not mean that any and all tactics in pursuit of the defeat of capital judgment are legitimate."


Mr. Chief Justice Castille joins this concurring opinion.